UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK C. BRIGGS,<br><br>            Plaintiff,<br><br>      v.<br><br>JAMES D. CAMPBELL, *et al.*,<br><br>            Defendants. | Civil Action No. 23-cv-116 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Frank Briggs and his mother Jennie Briggs sued several individuals involved in running and maintaining their rental apartments in Southwest D.C.  Plaintiffs allege they have been forced to live in uninhabitable conditions and were discriminated against based on race and disability.  Defendants moved to dismiss on all counts.  Having considered the record and the briefs, the court will GRANT Defendants' Motion.

## I.     BACKGROUND

Plaintiffs—both of whom are Black--are a disabled mother and her son who have lived at Channel Square Apartments in Southwest D.C. since 1996.  Am. Compl., ECF No. 11 at 4, 12. Plaintiffs have not had a positive rental experience.  They allege that their apartments contain "every D.C. Code Violation imaginable," including a leaking bathroom ceiling; a crack in the living room wall; asbestos; kitchen cabinets falling; outdated flooring; and a noisy convector. *Id.* at 4–6.  Plaintiffs allege that for the last ten years, they have been asking Defendants to fix these issues, with little success.  *See id.* at 6–9, 11–12.  Plaintiffs have also encountered problems working with Defendants to sign up for rental assistance programs and obtain an insurance payout related to the kitchen cabinets falling and breaking valuable items.  *Id.* at 13–18.

Plaintiffs filed this action *pro se* on January 13, 2023. See Compl., ECF No. 1. Defendants moved to dismiss, ECF No. 2, but the court subsequently allowed Plaintiffs to file an Amended Complaint and denied the motion to dismiss as moot, Min. Order, April 12, 2023. In their Amended Complaint, Plaintiffs bring eight claims: four for violations of federal criminal laws (Counts I, VI, VII, and VIII); one for a violation of the Fair Housing Act ("FHA") (Count II); and three for violations of D.C. housing laws (Counts III, IV, and V). Am. Compl. at 52–63. Plaintiffs seek $100 million in damages along with declaratory and injunctive relief requiring Defendants to relocate Plaintiffs to apartments of their choosing while they make necessary improvements to Plaintiffs' apartments. *Id.* at 51–52, 64–66.

Defendants renewed their motion to dismiss, ECF No. 12.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In deciding a motion to dismiss, the court presumes the truth of the factual allegations in the complaint and affords the plaintiff "every favorable inference that may be drawn from the allegations of fact." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 208–09 (D.D.C. 2013) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court does not, however, "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Id.* at 209 (citation omitted).

### III.     ANALYSIS

**A.     Criminal Law Claims**

In Counts I, VI, VII, and VIII, Plaintiffs allege that Defendants violated criminal statutes—18 U.S.C. §§ 241, 242, 371, 1341.  Am. Compl. at 52–54, 59–63.  Section 241 provides for criminal punishment "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241.  Similarly, § 242 prohibits "the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" when the perpetrator acts "under color of" law.  *Id.* § 242.  Section 371 provides for criminal punishment "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . and one or more of such persons do any act to effect the object of the conspiracy." *Id.* § 371.  And § 1341 criminally punishes financial fraud schemes.  *Id.* § 1341.

These statutes, however, do not create private causes of action.  *See, e.g.*, *Keyter v. Bush*, No. 04-5324, 2005 WL 375623, at *1 (D.C. Cir. 2005) (explaining that criminal statutes "do not convey a private right of action"); *accord Al-Tamimi v. Adelson*, No. 16-cv-445, 2024 WL 765501, at *5 (D.D.C. Feb. 23, 2024).  Because none of the criminal statutes create private rights of action, Defendants' motion to dismiss Counts I, VI, VII, and VIII will be granted.  *See e.g.*, *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018) (dismissing criminal statute-based claims in civil action for lack of subject matter jurisdiction); *Al-Tamimi*, 2024 WL 756601, at *5.

**B.     FHA Claim**

In Count II, Plaintiffs allege that Defendants violated the FHA because their harmful housing practices are discriminatory.  Am. Compl. at 54–56.  Plaintiffs, however, cite the

entirety of the FHA—and no specific provision of the FHA—in their Complaint. Because Plaintiffs proceed *pro se*, and the court liberally construes *pro se* pleadings, it first determines the type of FHA claim Plaintiffs bring. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted)).

Although the FHA primarily addresses housing availability, rather than habitability, the D.C. Circuit has noted that 42 U.S.C. § 3604(b) is "directed at those who provide housing and then discriminate in the provision of attendant services or facilities." *Clifton Terrace Assocs. v. United Techs. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991). The court will therefore construe Count II as a claim under § 3604(b). Moreover, because Plaintiffs cite 24 C.F.R. § 100.500, *see* Am. Compl. at 54–55, which provides that FHA liability may be "based on a practice's discriminatory effect . . . even if the practice was not motivated by a discriminatory intent," but also refer to Defendants' actions as "disparate treatment," the court will analyze Plaintiffs' claim under both the disparate impact and disparate treatment frameworks.

Plaintiffs' first obstacle is that, even though § 3604(b) does "address habitability," *Clifton Terrace Assocs.*, 929 F.2d at 720, it is not clear that Plaintiffs' claim that Defendants failed to maintain the premises is cognizable. Section 3604(b) provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The D.C. Circuit has not decided the scope of § 3604(b), but several Circuits have held that § 3604(b) covers post-acquisition discrimination claims only if they are connected to the initial sale or rental of the dwelling or

constitute constructive eviction. *See, e.g.*, *Cox v. City of Dallas*, 430 F.3d 734, 746 (5th Cir. 2005); *Southend Neighborhood Improvement Ass'n v. St. Clair Cnty.*, 743 F.2d 1207, 1209–10 (7th Cir. 1984); *Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 632 (11th Cir. 2019). *But see Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009) (applying a broader test).

Under the Circuits' consensus test, Plaintiffs' FHA claim is unlikely to be cognizable under § 3604(b). For one thing, Plaintiffs' allegations are not connected to the initial 1996 rental of the dwelling. And, for another, Plaintiffs have not left the premises. Am. Compl. at 4. "Absent departure from the premises, a tenant has great difficulty in claiming a 'constructive eviction' equivalent to the actual physical interference with [their] possessory rights." *Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713, 716 (D.C. 2007). The court need not decide whether Plaintiffs' maintenance allegations are covered by § 3604(b), however, because Plaintiffs have failed to state a claim either way.

Even if a failure to maintain the premises is cognizable under § 3604(b), Plaintiffs do not state a claim for disparate impact or disparate treatment. "To survive a motion to dismiss a claim of disparate impact under the FHA . . . a plaintiff must allege that a facially neutral practice or policy has a disproportionate impact on persons" in a protected class. *Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016); *see* 24 C.F.R. § 100.500(a) ("A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of" the plaintiff's protected class); *see also Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project*, 576 U.S. 519, 537–39 (2015) (disparate impact claims are cognizable under the FHA). Plaintiffs, however, have not alleged that Defendants have a "practice or policy" of failing to

maintain apartments or that the policy or practice has a disparate impact on persons in a protected class. Regarding policy or practice, Plaintiffs have pleaded only that Defendants failed to maintain their apartments—not that Defendants have a "facially neutral practice or policy" of failing to maintain apartments in general. *Boykin*, 650 F. App'x at 44; *see* Am. Compl. at 55 ("Defendants' policy and practice of denying Plaintiffs' total repair of all code violations . . . is disparate treatment.").

Plaintiffs have also not pleaded disparate impact. In *Boykin*, a panel of the D.C. Circuit granted a motion to dismiss an FHA claim because plaintiffs "alleged only that some of them" belong to a protected class and that defendant's actions "ma[de] it more difficult for those [plaintiffs] to obtain services." 650 F. App'x at 44. "Allegations about [plaintiffs'] individual experiences . . . however, say nothing about whether [defendants' actions] had a disparate impact on persons [in that protected class] as opposed to persons [not in that protected class]." *Id.* By contrast, in *National Fair Housing Alliance v. Travelers Indemnity Co.*, 261 F. Supp. 3d 20, 33–34 (D.D.C. 2017), the court concluded that plaintiff did state an FHA claim because they "did not just allege that some voucher recipients are members of a protected class, but rather pleaded facts that show that voucher recipients are significantly more likely to be members of a protected class than is true for the D.C. population as a whole." In fact, plaintiff's complaint included a "statistical analysis" of the "relevant geographic region." *Id.* at 34; *accord Alexander v. Edgewood Mgmt. Corp.*, 15-cv-1140, 2016 WL 5957673, at *4 (D.D.C. July 25, 2016) (plaintiff stated a disparate impact claim because he included statistics in his complaint). Plaintiffs' Complaint is similar to the complaint in *Boykin*, not those in *Travelers* and *Alexander*, because Plaintiffs have not alleged that Defendants' actions had a disparate impact on Black or disabled

tenants as opposed to White or able-bodied tenants. Nor have Plaintiffs supported their allegations with statistics.

Finally, Plaintiffs have not stated a claim for disparate treatment. "To state a claim of disparate treatment," Plaintiffs "needed to allege that 'the defendant intentionally discriminated against them on the basis of'" their protected class. *Boykin*, 650 F. App'x at 44 (citation omitted). In *Boykin*, the panel affirmed the district court's dismissal of plaintiffs' disparate treatment claim because, although the "complaint describe[d] the race of each [plaintiff], and state[d] that [defendant's] program [wa]s 'an excuse for closing the shelters in the predominantly white parts of the city,'" it did not "contain allegations" to make out plaintiffs' theory that closing the shelter was "part of an effort to move predominantly minority homeless persons" from White neighborhoods into minority neighborhoods. *Id.* at 44–45. Plaintiffs here have pled far less than plaintiffs in *Boykin*: all they have alleged is that they are both Black and one of them is disabled, Am. Compl. at 12, and that Defendants' failure to maintain Plaintiffs' apartments "is disparate treatment," *id.* at 55. But the court does not accept as true the legal conclusions in the Complaint. *Laughlin*, 923 F. Supp. 2d at 208–09 (citation omitted). And "[e]ntirely missing are any factual allegations that would support" Plaintiffs' allegation "of intentional discrimination based on race" or disability. *Boykin v. Gray*, 895 F. Supp. 2d 199, 208 (D.D.C. 2012).

In sum, Plaintiffs have failed to state a claim for a violation of the FHA. Because Plaintiffs proceed *pro se*, and may be able to plead additional facts that state a claim for relief, the court will dismiss Count II without prejudice.

**C.     D.C. Law Claims**

Finally, the court does not have original jurisdiction over Counts III, IV, and V—the D.C. law claims—and will decline to exercise supplemental jurisdiction over these claims.

The court does not have federal question jurisdiction over these claims because they allege violations of D.C. law, not federal law. Count V names the Declaratory Judgment Act in alleging a violation of the D.C. Human Rights Act, Am. Compl. at 57–59, but the Declaratory Judgment Act does not create an independent basis for federal question jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). Nor does the court have diversity jurisdiction over any of the local law claims. To have diversity jurisdiction, a plaintiff must establish diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Diversity of citizenship is assessed at the time of filing, *see Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957), and requires "complete diversity," which means that no plaintiff and defendant can be from the same state, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). Plaintiffs cannot establish complete diversity because Plaintiffs and several Defendants all reside in the District of Columbia. Am. Compl. at 1, 13. Thus, the court does not have original jurisdiction over any of the local law claims.

When a "court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" any additional claims. 28 U.S.C. § 1367(c)(3). Consequently, the court will dismiss without prejudice the local law claims. *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 1995) (federal courts may dismiss without prejudice claims requiring supplemental jurisdiction after original jurisdiction claims are dismissed).

## IV.     CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 12.  An Order will accompany this Memorandum Opinion.

Date: March 20, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge